*UNITED STATES BANKRUPTCY COURT*
*Martin Luther King Federal Building*
*50 Walnut Street*
*Newark, New Jersey 07102*
*973-645-4704*

*Novalyn L. Winfield*
*Bankruptcy Judge*

July 7, 2008

Justin M. Gillman, Esq.
Gillman & Gillman
770 Amboy Avenue
Edison, NJ 08837

Louis A. Modugno, Esq.
McElroy, Deutsch & Mulvaney
1300 Mt. Kemble Avenue
PO Box 2075
Morristown, NJ 07962

> RE:  Meena Karppiah
> Case No.:   04-19266 (NLW)
> Adv. No.:   04-2821
> **LETTER OPINION**

Dear Counsel:

This matter before the court involves documents encaptioned Residential Lease Agreement ("Lease") and Amendment to Rental Contract ("Lease Amendment"). The parties disagree regarding the interpretation of the contractual agreements and their respective rights under the agreements. The plaintiff maintains that the agreements simply constitute a lease, and while she admits to payment defaults under the lease, she argues that defendant is subject to statutory damages under N.J.S.A. § 46:8-21.2 for having charged an excessive security deposit. The defendant denies

the plaintiff's contentions and further seeks payment of past due rent, late fees and an award of legal fees. As set forth below, the court finds that the security deposit may be applied to satisfy plaintiff's postpetition rental obligation.

## JURISDICTION

Plaintiff's counsel incorrectly asserts that the instant matter is a core proceeding. In fact, the present matter is a classic non-core proceeding as it does not fit within any of the categories of core proceedings identified in 28 U.S.C. § 157(b)(2). Nonetheless, defendant has indicated a willingness for the court to enter a final judgment in this matter.

## FINDINGS OF FACT

On March 6, 2008, the court heard testimony in this adversary proceeding from the plaintiff Meena Karppiah ("Mrs. Karppiah"), her husband Raju Karppiah ("Mr. Karppiah"), the defendant Hinaxi Doshi ("Mrs. Doshi") and her husband Samir Doshi ("Mr. Doshi"). From the testimony the court ascertained the following facts:

1. Both Mrs. Karppiah and Mr. Karppiah have limited formal educations. Neither individual received more than the equivalent of a 5th grade education in India, and have not received any formal education since coming to the United States.

2. After listening to their testimony, it is evident to the court that Mrs. Karppiah and Mr. Karppiah do not fluently speak English and have a limited comprehension of written English. It was also evident to the court that the individuals lack financial sophistication.

3. On the other hand, Mrs. Doshi appeared knowledgeable regarding the substance of both the Lease and the "Lease

        Amendment", as well as substance of the transaction generally. However, it was also apparent that she did not negotiate any terms of the Lease or Lease Amendment and did not draft any document.

4. Rather it appears that Mr. Doshi negotiated the Lease terms and also drafted the Lease Amendment. He appeared to the court to be a sophisticated businessman, knowledgeable about mortgages and real estate as a result of his business as a mortgage broker.

5. In fact, from the testimony, it appears that the Karppiahs were introduced to Mr. Doshi for the purpose of obtaining a mortgage. The Karppiahs sought to purchase 99 Old Post Road, Edison, New Jersey ("the Property").

6. It appears that the Karppiahs were not financially able to purchase the Property. From the testimony, it was not clear whether their inability was attributable to poor credit use, insufficient income, or both.

7. The solution apparently agreed upon by the Karppiahs and Mr. Doshi was Mr. Doshi was to purchase the Property and then rent it to the Karppiahs. After approximately one year of renting the Property, the Karppiahs would then purchase the Property.

8. It also appears from the testimony of all witnesses that the Karppiahs relied heavily on Mr. Doshi to explain the transaction to them. Mr. Doshi testified that the Karppiahs described him as their savior.

9. The Property was purchased by Mrs. Doshi (D-1). There was some testimony that the Karppiahs paid some or all of the closing costs. This provides in part the basis for Plaintiff's claim that she paid Mrs. Doshi - $19,018.35.

10. However, the court's impression of the Karppiahs is that they did not understand the terms. Rather, they entered into the Lease and Lease Amendment based on their trust in Mr. Doshi and their hope to purchase the house at the end of the Lease.

11. Contemporaneous with the sale of the Property to Mrs. Doshi, the Lease was executed between Mrs. Doshi and the Karppiahs on October 4, 2002 (P-1).

12. The Lease provided for monthly rental payments of $2,180.00 and a security deposit of $15,000.00.

13. Also executed on October 4, 2002 was the Lease Amendment under which the Karppiahs agreed to purchase the Property for $229,000.00. In the event the Karppiahs failed to purchase the Property the Lease Agreement permitted Mrs. Doshi to sell the Property to any third party.

14. The Lease Amendment further provided: In the event if the market value of the subject property falls below the original purchase price (229,000.00); will still be the responsibility of Mrs. Meena Karppiah to buy at least at $229,000.00 within 90 days of the notice, otherwise the deposit will be forefeited.

15. Mr. And Mrs. Doshi acknowledge receiving at least $15,000.00 as a security deposit and Mrs. Doshi deposited $14,097.03 into a checking account at Unity Bank. (P-4). Nothing on the bank statement indicates that the account constituted an interest bearing trust account.

16. Mrs. Doshi conceded that the security deposit was no longer held at Unity Bank, and from her testimony and that of Mr. Doshi it appeared to the court that they applied the deposit against rent arrears. However, it is not clear when this occurred.

17. Unfortunately, it also appears that during the Lease term the Karppiahs were simply not able to meet their monthly payments. Eventually, Mrs. Doshi commenced an eviction action for non-payment of rent.

18. Mrs. Karppiah filed for relief under Chapter 13 of the Bankruptcy Code on March 18, 2004.

19. The previous day, March 17, 2004 Mrs. Doshi had obtained a judgment for possession of the Property from the Superior Court of New Jersey, Special Civil Part in Middlesex County.

20. Postpetition, Mrs. Karppiah likewise defaulted on her

        obligations under the Lease, and Mrs. Doshi again demanded payment.

21.    Also during this Chapter 13 case Mrs. Doshi and Mrs. Karppiah agreed to an increase in the rent from $2,180.00 to $2,750.00.

22.    Mrs. Karppiah admitted at trial that no rent had been paid for the previous 26 months.

23.    Following the trial, Mrs. Karppiah's counsel filed a Post-Trial Brief setting forth the damages sought by Mrs. Karppiah at $38,0363.70. This amount represents twice the sum (19,018.35) alleged to have been collected by Mrs. Doshi at the time the Lease was executed. Additionally, Mrs. Karppiah seeks attorneys fees and costs amounting to $18,522.04

24.    On behalf of Mrs. Doshi, her counsel supplied a calculation of damages as follows:

| | |
|---|---|
| Past Due Rent (through March 2008) 20 months @ $2,750/month | $55,000 |
| Late Fees as per Lease Agreement $50/past due payment (20) | $ 1,000 |
| MDMC Legal Fees through trial | $12,686 |
| Legal Fees paid to prior attorneys | $14,000 |
| TOTAL | $82,686 |

## DISCUSSION

Counsel for Mrs. Doshi argues that the Lease and Lease Amendment constitute a single agreement. The court agrees. In *Wellmore Builders, Inc. v. Wannier*, the court stated:

> [i]t is now settled that two or more writings which are all parts of one transaction relating to the same subject matter, are to be read and interpreted as one instrument, whether or not they refer to each other. The instruments need not be executed on the same day nor each contain a separate mention of consideration.

5

*49 N.J. Super 456, 463* (App. Div. 1958)(citations omitted*).*

In *Wellmore* the court was considering agreements executed years apart. In the matter at hand the task is much easier as both the Lease and Lease Amendment were executed on the same day. Very clearly, both documents reference the Property and attempt to delineate the rights and responsibilities of both Mrs. Karppiah and Mrs. Doshi with regard to the Property.

However, the court disagrees with defendant's further contention that the $15,000 security deposit set forth in the Lease also constitutes a forfeitable deposit for the purchase option contained in the Lease Amendment. A reading of paragraph 4 of the Lease makes it amply evident that the $15,000 deposit was intended as a security for Lease. It is quite lengthy and specific, providing as follows:

> 4. Security Deposit. The Tenant has deposited $15,000 with the Landlord as security that the Tenant will comply with all the terms of this Lease. If the Tenant complies with the terms of this Lease, the Landlord will return this deposit within 15 days after the end of the Lease, including any extension. The Landlord may use as much of the deposit as necessary to pay for damages resulting from the Tenant's occupancy. If this occurs prior to the Lease termination, the Landlord may demand that the Tenant replace the amount of the security deposit used by the Landlord. If the Landlord sells the property, the Landlord may transfer the deposit to the new owners for the Tenant's benefit. The Landlord will notify the Tenant of any sale and transfer of the deposit. The Landlord will then be released of all liability to return the security deposit. The Landlord will fully comply with any applicable Rent Security Laws. This includes the Landlord depositing the security deposit in an interest-bearing account and notifying the Tenant, in writing, of the name and address of the banking institution and the account number. Interest due the Tenant will be credited as rent on each renewal date of this Lease.

Importantly, the very language of this paragraph declares that Mrs. Doshi will "fully comply with any applicable Rent Security Laws." Thus, Mrs. Doshi's contention that The Security Deposit Act

6

does not apply is a remarkable about face. Moreover, Mrs. Doshi's current position is not supported by N.J.S.A. § 46:8-26, which provides:

> The provisions of this act shall apply to all rental premises or units used for dwelling purposes except owner-occupied premises with not more than two rental units where the tenant has failed to provide 30 days written notice to the landlord invoking the provisions of this act.

As described in the Lease, the Property is plainly a rental premises used for a dwelling purpose and the Security Deposit Act, N.J.S.A. §§ 46:8-19, et seq. is fully applicable.

Accordingly, Mrs. Doshi's requirement that Mrs. Karppiah provide a security deposit of $15,000.00 is in violation of N.J.S.A. § 46:8-21.2, which limits an owner or lessee to 1 1/2 month's rental as a security deposit. Given the monthly rental of $2,180.00 initially provided in the Lease, the security deposit should not have exceeded $3,270.00. Additionally, by failing to notify Mrs. Karppiah of the financial institution in which the security deposit was held, and by subsequently liquidating the account, Mrs. Doshi violated N.J.S.A. § 46:8-19.

Mrs. Doshi is also prevented from asserting that the Lease security deposit served as a forfeitable deposit for the purchase option in the Lease Amendment. The Security Deposit Act, at N.J.S.A. § 46:8-24, provides that a tenant who provides a deposit cannot waive any provision of the Security Deposit Act. Thus, Mrs. Karppiah could not have agreed to forfeit her Lease security deposit in favor of a forfeitable deposit on the purchase option. Mrs. Doshi cannot contractually circumvent the terms of the Security Deposit Act. In any event, the deposit provision in the Lease Amendment must be stricken as unconscionable.

The instant contractual arrangement bears many of the indicia of a contract of adhesion. A contract must be deemed a contract of adhesion where one party must accept or reject the contract. *Gamble v. Connolly*, 399 N.J. Super 130, 142 (Sup. Ct. 2007). To determine whether a contract of

adhesion is enforceable, a court must look to the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the "adhering" party, and the public interests that are affected. *Id. at 143* (citing to *Rudbart v. N.J. Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992).

In the matter at hand, Mrs. Karppiah was in an inferior bargaining position in that she lacked the financial resources to otherwise attempt to purchase a home. Moreover, she and her husband are not well educated, lack financial sophistication, and are not literate in the English language. By the testimony of both Karppiahs and Mr. Doshi, they relied upon him and trusted that he was acting in their best interests. However, the very language of the Lease Amendment, which is favorable only to Mrs. Doshi, demonstrates that its terms were dictated by Mr. Doshi as the dominant party. To enforce the forfeiture provision of the Lease Amendment is violative of the Security Deposit Act and thus inimical to the public policy of the State of New Jersey. As noted in *Gamble v. Connolly*, "[n]o contract can be sustained if it is inconsistent with the public interest or detrimental to the public good." *Id.* at 144. Thus the forfeiture provision in the Lease amendment is void and of no force and effect.

However, this provides only partial relief to Mrs. Karppiah as her main argument for relief is lacking in foundation. Counsel for Mrs. Karppiah argues that the appropriate damages for the violation of any aspect of the Security Deposit Act is twice the amount of the Security deposit plus reasonable attorneys' fees associated with recovery, citing to N.J.S.A. § 46:8-21.1. However, this section simply provides such a recovery for the failure to return a security deposit after termination of the lease. Under the terms of N.J.S.A. § 46:8-21.1, within thirty days after the expiration of the term of the tenant's lease, the landlord must return the deposit, with the tenant's share of interest,

8

less any expenditures allowed in accordance with the lease. It is the failure to follow the statutory requirements that entitles a tenant to double the amount of the refundable security deposit and costs of suit. In the present matter, although the Lease expired by its own terms, the Karppiahs remained as tenants even to the date of trial. Thus, there was no termination of the tenancy that required return of the security deposit.

Both counsel agreed that as of the trial date twenty (20) months of postpetition rent at the increased rate of $2,750.00 was due and owing, for a total of $55,000.00. The court agrees with counsel for Mrs. Doshi that application of the security deposit to the satisfaction of unpaid postpetition rent is a matter of recoupment since the obligations arise from the same lease and involve the same property. Thus, 11 U.S.C. § 553(b) is inapplicable to this matter. *See Warsco v. Household Bank,* 272 B.R. 246, 252 (Bankr. N.D. Ind. 2002). Consequently, by simple math, the rent due greatly exceeds the security deposit and even if N.J.S.A. § 46:8-21.1 were applicable, there would be no deposit to be doubled. *See Lorril Co. v. La Corte,* 352 N.J. Super. 433, 442 (App. Div. 2002). Thus, Mrs. Karppiah's claim for damages largely fails. However, she is entitled under N.J.S.A. § 46:8-19 to apply the security deposit to the unpaid rent.[1] However, the correct amount of the security deposit cannot be computed because there is no evidence before the court regarding the amount of interest that should have accrued in favor of Mrs. Karppiah. The court will require both counsel to conference with the court to determine the simplest method for supplying the information and computing the amounts ultimately payable to Mrs. Doshi.

---

[1] N.J.S.A. 46:8-19 provides for the tenant to give written notice to a landlord to apply a security deposit to satisfaction of unpaid rent. The court will treat the adversary proceeding complaint as such a request. To do otherwise only increases the amount due from the Karppiahs.

## **CONCLUSION**

For the reasons set forth above, the Plaintiff's request for relief is largely denied. Further, once properly calculated, the security deposit may be applied to satisfy Mrs. Karppiah's postpetition rent obligation. It is also apparent from the testimony that regardless of what the precise amount of unpaid rent will be, the Karppiahs will be unable to satisfy the remaining balance after the application of the security deposit. Accordingly, Mrs. Doshi is entitled to a Judgment for Possession of the Property.

Dated: 7/7/08

　　　　　　　　　　　　　　　　　　　　　　NOVALYN L. WINFIELD
　　　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge